UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


DEBRA RADER SHRUM,

     Plaintiff,                            Civil Action No. 16-02870

v.                                   HON. ALETA A. TRAUGER
                                      U.S. District Judge
                                      HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,


     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Debra Rader Shrum ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act.   On April 14, 2017, Plaintiff filed a Motion for Judgment [Docket #18].   On January 30, 2018, the case was assigned to the undersigned pursuant to 28 U.S.C. § 636 for a Report and Recommendation. For the reasons set forth below, I recommend that Plaintiff's Motion  [Docket #18] be DENIED.

# I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 24, 2011, alleging disability as of May 4, 2010 (Tr. 229-230). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on February 1, 2013 (Tr. 88-131). On March 15, 2013, Administrative Law Judge ("ALJ") Brian Dougherty found that Plaintiff was capable of performing her past relevant work as a computer clerk and as a customer service representative (Tr. 144-145). On June 20, 2014, the Appeals Council remanded the case for administrative proceedings, directing that the ALJ (1) provide an assessment of Plaintiff's mental limitations, (2) provide a rationale for the limitations found in the Residual Functional Capacity ("RFC"), and, (3) determine whether Plaintiff's past work activity rose to the level of "past relevant work" (Tr. 151-152). The Appeals Council also directed the ALJ to take supplemental testimony from a Vocational Expert ("VE") "[i]f warranted by the expanded record" (Tr. 152).

ALJ Dougherty held a second hearing on June 25, 2015 (Tr. 36). Plaintiff, represented by attorney Tina Foster, testified, as did VE Rebecca Williams (Tr. 45-76, 76-81). On July 31, 2015, ALJ Dougherty issued a partially favorable decision, finding that as of September 1, 2014, Plaintiff was disabled (Tr. 25-29). On September 22, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on November 14, 2016.

## II. BACKGROUND FACTS

Plaintiff, born November 9, 1961, was 53 when ALJ Dougherty issued his decision (Tr. 29, 229). She completed two years of college and worked previously as a "coordinator/auditor" and global supply chain specialist (Tr. 251). Her application for benefits alleges disability resulting from migraines, anxiety, depression, Gastroesophageal Reflux Disease ("GERD"), stress, fatigue, heel spurs, bunions, and a variety of upper extremity and back problems (Tr. 249). She reported that she stopped working because she was laid off (Tr. 250).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony at the June 25, 2015 hearing:

She lived with her husband (Tr. 45). Her 10-year-old grandson lived with them on weekdays (Tr. 45). Her husband continued to work (Tr. 47). Plaintiff relied on "frozen foods" for meal preparation (Tr. 47). Her husband grocery shopped, performed the heavier laundry chores, and vacuumed (Tr. 47). Plaintiff held a valid driver's license and was able to drive up to 10 miles at a time before experienced leg and back pain (Tr. 49). She received a handicap placard for her car several years earlier (Tr. 50). She last worked in 2010 (Tr. 50).

Plaintiff received a Workers' Compensation settlement due to "repetitive motion type . . . injury" in 1989 or 1990 (Tr. 52-53). She attributed her "lay-off" at her most recent position to her frequent migraines, but acknowledged that three other individuals had been

terminated at the same time (Tr. 53).

Plaintiff was unable to work due to migraines, noting that before being laid off, she used up her leave and vacation time due to the condition (Tr. 58). She was unable to type well due to hand problems (Tr. 60). She denied overuse of pain medication, noting that her current dosage eased her pain without preventing her from functioning "at all" (Tr. 60-61). Physical therapy and occupational therapy worsened her condition (Tr. 64). She experienced pain while sitting and walked with a limp (Tr. 65). Before hurting her back in 2009, she was able to walk four miles a day but now experienced discomfort even walking to the mailbox (Tr. 66).

In response to questioning by her attorney, Plaintiff testified that she was unable to hold or carry five pounds on a consistent basis (Tr. 69). Before being laid off, migraines caused her to miss three to four days of work each month (Tr. 70). She experienced two to three migraines each week lasting between four and ten hours (Tr. 70-71). In addition, she experienced chronic non-migraine headaches and sleep disturbances (Tr. 72). Due to non-restful sleep, she required two to three naps a day (Tr. 72). She spent a total of five hours a day napping (Tr. 73). Due to migraines and depression, she experienced comprehension and memory problems (Tr. 73-74). Her ability to work with others was compromised by depression and anxiety (Tr. 75). She experienced problems changing routines (Tr. 75-76).

## B. Medical Evidence

### 1. Records Related to Plaintiff's Treatment[1]

February, 2010 records by Robert McDaniel, M.D. note Plaintiff's report that her headaches were "not quite as frequent and . . . easier to control" (Tr. 381). Plaintiff reported that she was sleeping well and "missing less work" (Tr. 381). A May, 2010 MRI of the lumbar spine showed only mild degenerative disc disease with a shallow disc protrusion at L2-L3 (Tr. 375, 467). Dr. McDaniel's July, 2010 records state that Plaintiff experienced "situational stress and anxiety" due to losing her job and her husband's reduction in hours (Tr. 379). The same month, T. Scott Baker, M.D. noted Plaintiff's report of radiating back pain (Tr. 444). He observed that Plaintiff was in no acute distress with a normal mental status examination (Tr. 446). She demonstrated a normal gait, full muscle strength, and normal muscle tone (Tr. 446). Physical therapy records note that Plaintiff's goals were "met" (Tr. 464). The following month and in September and October, 2010, he administered epidural injections (Tr. 338, 440, 442). In November, 2010, Plaintiff reported that her back condition was unchanged (Tr. 435).

January, 2011 range of motion studies were unremarkable (Tr. 430). In February, 2011, Dr. McDaniel recommended that Plaintiff exercise and lose weight (Tr. 377). The same month, she underwent a fasciotomy of the left foot for the condition of plantar fasciitis

---

[1]Records significantly predating the alleged onset date of May 4, 2010 and records created well after September 1, 2014 (onset of disability date found by the ALJ) are omitted from the present discussion.

(Tr. 453). Followup records show initially good results (Tr. 454-455). March, 2011 records by Kimberly Plourde, M.D. state that Plaintiff was able to walk without difficulty (Tr. 468). In May, 2011, Plaintiff underwent additional epidural injections without complications (Tr. 418). The same month, Plaintiff reported "constant" left foot pain (Tr. 448). Dr. Baker's August, 2011 records note Plaintiff's report of "9/10" pain on average (Tr. 471). He advised her to "stay active and continue home exercise program" (Tr. 473).

Dr. Baker's April, 2012 records note full muscle strength despite Plaintiff's report of continuing, intractable pain (Tr. 607-609). May, 2012 audiological testing showed "mild to profound asymmetrical sensorineural hearing loss bilaterally" but that Plaintiff retained "excellent" word recognition in both ears (Tr. 651). August, 2012 records also show full muscle strength (Tr. 605). Dr. McDaniel's October, 2012 records note Plaintiff's report of migraines once or twice a week (Tr. 618).

In April and August, 2013, Dr. Baker noted that conservative treatment for back pain "provided a reduction in pain, improved quality of life, and improved activity level" (Tr. 688, 695). Dr. Baker's January, 2014 records note good results from physical therapy, home exercise, and transcutaneous electrical stimulation ("TENS") (Tr. 711). February, 2014 imaging studies of the bilateral hands showed moderate osteoarthritis of the thumb joints (Tr. 717). In March, 2014, Dr. Baker administered bilateral wrist injections, noting that conservative measures "including medications and exercise" had failed (Tr. 718-719). September, 2014 EMG testing of the upper extremities slowed "very mild to mild" bilateral

neuropathy of the wrist (Tr. 746). In December, 2014, Dr. Baker discharged Plaintiff for "inappropriate and/or threatening behavior" toward staff (Tr. 760).

## 2. Non-Treating Records

In August, 2011, Marie La Vasque, MA, on behalf of Susan R. Vaught, Ph.D., performed a consultative psychological examination, noting Plaintiff's report that daily activities were curtailed by migraines and back and foot pain (Tr. 506). La Vasque concluded that Plaintiff's attention "appeared to be intact, but her concentration appeared to be mildly to moderately impaired" with mild impairment in short-term memory (Tr. 507). La Vasque noted that Plaintiff's allegations of depression and anxiety bore a "primarily . . . somatic focus" (Tr. 507). She found that Plaintiff was capable of "understanding simple and complex instructions but "may have difficulty adapting to changes in work environment and/or job requirements" (Tr. 508).

The following month, Babar Parvez, M.D. examined Plaintiff on behalf of the SSA, noting full strength in all extremities (Tr. 511). He noted a normal range of motion except for restriction of the dorsolumbar spine and left ankle (Tr. 512). The same month, R. Warren, M.D. performed a non-examining Psychiatric Review Technique, finding that as a result of depression and anxiety, Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 513, 516, 518, 523). Dr. Warren found that Plaintiff experienced moderate limitation in carrying out detailed instructions, maintaining concentration for extended periods, working

within a schedule, working with others without distraction, completing a normal workweek without psychologically-based interruption, interacting appropriately with the public, accepting instruction, and getting along with coworkers (Tr. 527-528). He nonetheless concluded that Plaintiff was capable of performing unskilled work (Tr. 525, 529).

Also in September, 2011, Tyra Harris, M.D. performed a non-examining review of the treating and consultative records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; stand or walk at least two hours in an eight-hour workday and sit for six; and push and pull without limitation (Tr. 532). Dr. Harris found that Plaintiff could climb stairs/ramps, kneel, crouch and crawl occasionally and frequently balance and stoop (Tr. 533). She found that Plaintiff was precluded from all climbing or ladders, ropes, or scaffolds and should avoid concentrated exposure to hazards such as machinery or heights (Tr. 533, 535). She found Plaintiff "partially credible" (Tr. 538).

In November, 2011, Jenaan Khaleeli, Psy.D. affirmed Dr. Warren's September, 2011 findings (Tr. 548). The same month, Thomas Thrush, M.D. performed a non-examining review of the examining and consultative records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 550). He found that Plaintiff could perform occasional postural activity (Tr. 551). He cited treating records noting a normal gait and full muscle strength (Tr. 556).

On September 24, 2014, Albert Gomez, M.D. performed a consultative physical examination on behalf of the SSA, noting an antalgic gait and moderate difficulty getting on and off the examining table (Tr. 727). He noted a 3/5 hand grip and motor strength in the upper extremities (Tr. 728). Plaintiff was unable to tandem walk, squat, or stand on one leg (Tr. 728). Dr. Gomez found that Plaintiff was limited to lifting 10 pounds on an occasional basis but no carrying (Tr. 730). He found that Plaintiff was limited to sitting for three hours, standing for two, and walking for one in an eight-hour day (Tr. 731). He limited Plaintiff to occasional manipulative activity with a preclusion on pushing and pulling (Tr. 732). He precluded all postural activity except occasional stooping (Tr. 733). He precluded all work involving unprotected heights, moving machinery, and vibration and limited Plaintiff to occasional operation of a motor vehicle, airborne hazards, and temperature extremes (Tr. 734). He found that Plaintiff was unable to walk for even one block on rough or uneven surfaces (Tr. 735). The following month, Karla D. McQuain, Ph.D. found that due to depression and anxiety, Plaintiff experienced short-term memory impairment, mild impairment in concentration and moderate impairment in social functioning and adaptability (Tr. 741). Dr. McQuain found moderate limitation in interacting with public, supervisors, and coworkers and moderate difficulty adapting to workplace changes (Tr. 743).

### C. Vocational Expert

VE Rebecca Williams classified Plaintiff's past relevant work as a booking clerk as sedentary and skilled; budget record clerk, sedentary/skilled; and internal auditor, light

(sedentary as performed)/skilled[2] (Tr. 76-77). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work background:

> [C]onsider that [this] individual can occasionally lift 20 pounds, frequently lift 10 pounds, consider that standing and walking are two hours per day . . . sitting is approximately six hours per day. Postural activities on an occasional basis, with no use of ladders, no exposures to any hazards. From a mental standpoint, consider the individual could understand, remember, and carry out simple tasks and instructions, with occasional interaction with supervisors, frequent interaction with the public. Based on those limitations, is the past relevant work in those three positions you identified available? (Tr. 78).

The VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the light, unskilled work of a storage facility rental clerk (43,000 positions in the national economy); press operator (25,000); and sewing machine operator (35,000) (Tr. 79). The VE testified further that if the same individual were limited to lifting 10 pounds occasionally and five frequently; sitting, standing, or walking three hours a day; occasional handling, fingering, and reaching, and a preclusion on all postural activities, all work would be precluded (Tr. 80).

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

In response to questioning by Plaintiff's attorney, the VE stating that the job of arbor press operator was classified as light due to its use of hand and foot controls (Tr. 80). She noted further that the position of storage facility rental clerk was classified as light work "more because of the lifting" than standing and walking (Tr. 81). The VE stated that the need to miss three to four days of work each month would preclude all unskilled work (Tr. 81).

### D. The ALJ's Decision

ALJ Dougherty issued a partially favorable decision (Tr. 16-29). He found that as of September 1, 2014, Plaintiff was limited to sedentary work and was thus disabled[3] (Tr. 29).

The ALJ found that for the period proceeding September 1, 2014, Plaintiff was not disabled. Citing the medical transcript, ALJ Dougherty found that while Plaintiff experienced the severe impairments of "post-coccyx fracture, lumbosacral spondylosis without myelopathy, radiculopathy, chronic pain syndrome, lumbar degenerative disc disease, [herniated nucleus pulposus], plantar fasciitis, migraines, gastroesophageal reflux disease, irritable bowel syndrome, anxiety and depression, none of the impairments met or medically equaled "the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P,

---

[3]

Plaintiff, born November 9, 1961, was 52 on September 1, 2014. Under the "Grids," an individual limited to exertionally sedentary, unskilled work between the ages 50 to 55 ("closely approaching advanced age") directs a disability finding. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.

Appendix 1"[4] (Tr. 18-19). The ALJ found that Plaintiff experienced moderate limitation in social functioning and concentration, persistence, or pace (Tr. 19). From May 4, 2010 to September 1, 2014, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [S]he could occasionally lift/carry 20 pounds and frequently lift/carry ten pounds, could stand/walk for two hours and could sit for six hours. She could only occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds. She could never be exposed to environmental hazards. She could understand, remember and carryout simple instructions and tasks, have occasional interaction with supervisors and frequent interaction with the general public (Tr. 19).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, she could perform the light, unskilled work of a storage rental clerk, press operator, and sewing machine operator (Tr. 28, 79).

The ALJ discounted Plaintiff's allegations of disabling limitation for the period predating September 1, 2014 (Tr. 19). He noted that a May, 2010 MRI of the lumbar spine showed only mild degenerative disc disease (Tr. 21). He cited 2010 and 2011 records showing improvement with conservative treatment (Tr. 21). He noted that Plaintiff reported good results from the intermittent use of psychotropic medication for the conditions of anxiety and depression (Tr. 22). In support of the RFC, he cited the non-examining source

---

[4]

The ALJ found that as of September 1, 2014, Plaintiff also experienced the severe impairment arthritis of the hand (Tr. 18). He noted that while a 1994 Workers' Compensation settlement noted limitations of the hand, there were "no diagnosis or treatment record in the file addressing this condition before the claimant saw the independent consultant in September of 2014 (Tr. 19).

findings that Plaintiff was capable of a reduced range of light work (Tr. 23).

The ALJ cited the records stating that Plaintiff "wanted to quit work in 2008, but did not quite due to financial issues" (Tr. 23). He noted that while Plaintiff claimed to be "discharged" for taken too many sick days, "her description" of the work termination suggested that she was laid off as part of a reduction in work force (Tr. 23). He noted that Plaintiff was capable of driving, doing errands for her mother, laundry, shopping with the use of an electrical cart, reading, paying bills, doing errands, and using a computer (Tr. 24). He cited a psychological examiner's finding of "excess focus on her somatic complaints" (Tr. 24). He found that Plaintiff had "suboptimal motivation to reenter the workforce" (Tr. 24).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# V. ANALYSIS

Plaintiff disputes the finding that she was not disabled until September 1, 2014, making three arguments in favor of remand. *Plaintiff's Brief,* 5-18, *Docket #19,* Pg ID 907. First, she contends that the RFC for the period prior to September 1, 2014 describes essentially sedentary rather than light work. *Id.* at 5-10. Next, she argues that the ALJ erred by declining to "consult a medical expert" to determine the extent of her upper extremity limitations in the period before September 1, 2014. *Id.* at 10-14. Finally, she faults the ALJ for failing to consider her "stellar work history" in discounting her allegations of limitation. *Id.* at 14-18.

## A.  Light Work

Plaintiff contends that while the ALJ found that she could perform exertionally "light" work prior to September 1, 2014, the RFC limiting her to standing or walking for two hours a day actually describes sedentary work. *Id.* at 5-10 (*citing* Tr. 19).

 Under 20 C.F.R. § 404.1567(b), light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work is characterized by the ability to walk, stand, or push/pull. *"*Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* In contrast, sedentary work is limited to "lifting no more than 10 pounds at a time" with only occasional walking and standing. §

404.1567(a). SSR 83-10p describes exertionally light work as follows:

> Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work.... Relatively few unskilled light jobs are performed in a seated position. 1983 WL 31251, at *5 (January 1, 1983).

The ALJ found that Plaintiff had an RFC for "light work as defined in 20 C.F.R. 404.1567(b) in that she could occasionally lift/carry 20 pounds and frequently lift/carry ten pounds, could stand/walk for two hours and could six for six hours" (Tr. 19). The ALJ noted that the physical limitations in RFC were drawn from the non-examining assessments of Drs. Harris and Thrush (Tr. 23 *citing* 532, 550).

The question of whether Plaintiff was limited to sedentary work is critical given that under the "Grids," an individual limited to exertionally sedentary, unskilled work between the ages 50 to 55 ("closely approaching advanced age") directs a disability finding. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. At first glance, the restriction to standing/walking two hours a day would appear to limit Plaintiff to sedentary work, despite her ability to lift up to 20 pounds. However, the ALJ did not err in finding Plaintiff capable of light work. First, the VE's testimony that the RFC for standing/walking only two hours a day would allow for a significant range of light work (the jobs of storage facility rental clerk, press operator, and sewing machine operator) constitutes substantial evidence in support of the Step Five "light" work findings (Tr. 79-

80).  *See* SSR 83-14, 1983 WL 31254, at *3 (January 1, 1983)(VE assistance "advisable"

in  "situations where the rules would direct different conclusions, and the individual's

exertional limitations are somewhere 'in the middle' in terms of the . . . criteria for

exertional ranges of work").  Where a claimant's RFC falls between the light and

sedentary categories, "[s]o long as the hypothetical is accurate, the administrative law

judge may rely on the vocational expert's testimony to find that the plaintiff can perform

a significant number of jobs in the national economy.  That is exactly what the

administrative law judge did, and we find no error in his approach."  *Branon v.

Commissioner of Social Sec.*, 539 Fed.Appx. 675, 680 (6th Cir. October 2, 2013); *See also

Clark v. Colvin*, 2017 WL 169103, at *5 (M.D.Tenn. January 17, 2017); *adopted*, 2017

WL 1425523, at *1 (M.D.Tenn. April 21, 2017)("Because the Plaintiff's RFC was

between [exertional] ranges of work, the ALJ appropriately  . . . sought the assistance of a

VE).

   Moreover, the VE testified as to *why* the job findings were categorized as light

rather than sedentary.  She noted that while none of the three jobs required extensive

walking or standing, two of the three jobs  required the use of foot controls.  *See* SSR 83-

10 at *5 (light work *also* includes work involving "sitting most of the time but with some

pushing and pulling of arm-hand or leg-foot controls." (Emphasis added).   The VE

testified that  the press operator position was performed in a seated position but required

"the frequent use [of] hand . . . or foot controls"[5] (Tr. 80). She noted further that the position of storage facility rental clerk  fell into the light range due to the lifting requirements and the need to "occasionally . . . go to a unit and lock it out or unlock it for someone" (Tr. 81).

Plaintiff's argument that her "significantly reduced" ability to perform light work directs a sedentary finding fails for the same reasons. *See* SSR 82-14 at *3. She cites POMS 25015.006(E(1)(d), which states that a reduction in standing/walking to four hours a day "significantly" erodes the exertionally light occupational base.[6] *Plaintiff's Brief* at 9. However, under § 404.1567(b), light work can be performed "sitting most of the time with some pushing and pulling of arm or leg controls" in lieu of a "good deal of walking or standing," as more commonly required for light work. Two of the three positions cited by the VE required the use of foot controls. Notably, neither of the non-examining sources cited by the ALJ found  limitation in pushing or pulling in any extremity (Tr. 532, 550). Because substantial evidence supports the finding that Plaintiff can perform jobs allowing her to sit for 75 percent of the day with the use of foot petals, she is capable of

_____

[5]While the ALJ did not ask the VE to explain why the position of sewing machine operator was classified as a light position, he was presumably aware that operating a sewing machine requires the use of foot pedals.

[6]
POMS 25015.006(E(1)(d) does not include a statement that standing/walking four hours a day significantly erodes the light occupational base.  https://secure.ssa.gov/poms.nsf/lnx/0425015006. (Last visited May 21, 2018).  Nonetheless, I will consider Plaintiff's argument that a limitation to standing/walking four hours "significantly" reduces the number of light jobs.

exertionally light work as contemplated by the regulations.

Contrary to Plaintiff's further argument, the ALJ sufficiently articulated his reasons for finding that she was capable of a range of light rather than sedentary work until September 1, 2014. He noted that an MRI of the lumbar spine showed only mild degenerative disc disease (Tr. 21). He cited 2011 records showing negative neurological findings, a normal gait, and the ability to toe and heel walk (Tr. 21, 24). The ALJ noted that Plaintiff went "months at a time without examination or treatment" (Tr. 24). As noted further below, the ALJ provided a rationale for partially discounting her allegations of physical limitation.

As such, Plaintiff's claim that she is essentially unable to perform most of the requirements of light work or that the ALJ failed to provide an adequate rationale for the RFC should be rejected.

### B. The Use of a Medical Expert

Plaintiff argues second that the ALJ erred by failing to consult a medical expert to determine whether her hand condition created significant work-related impairment before September 1, 2014. *Plaintiff's Brief* at 10-14.

SSR 83-20 governs the determination of an onset of disability date. 1983 WL 31249, at *3 (January 1, 1983). "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, *e.g.*, the date the claimant

stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case." *Id.*

The determination of the onset date, "must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made." *Id.*

However, the ALJ did not err in declining to consult a medical advisor in finding that the hand condition did not become a severe impairment until September 1, 2014 (Tr. 25). He noted that none of the 2012 or 2013 records mentioned hand pain (Tr. 25). While February, 2014 imaging studies showed moderate osteoarthritis of the thumb joint, the ALJ noted that the records for this period show that she could still bathe, dress, groom herself, prepare meals, drive, shop, and care for pets (Tr. 25). My own review of the records shows that nerve conduction studies of the upper extremities performed on September 16, 2014 show only "very mild to mild bilateral median neuropathy of the bilateral wrists" (Tr. 748). None of the records shows the presence of reduced hand grip until Dr. Gomez's September 24, 2014 examination (Tr. 728). Because the ALJ's discussion and review of the medical evidence was well supported and explained, he did not err in declining to consult a consultative medical expert. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836-37 (6th Cir. 2006)(medical expert not necessary to

augment the well supported findings regarding the onset date). Moreover, under 20 C.F.R. § 404.1512(a), a claimant must "'furnish medical and other evidence that [the SSA] can use to reach conclusions about her medical impairment(s) and ... its effect on her ability to work on a sustained basis.'" *Cranfield v. Commissioner, Social Security*, 79 Fed.Appx. 852, 858, 2003 WL 22506409, *5 (6th Cir. November 3, 2003)(punctuation omitted)(citing § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)(ALJ authorized *but not required* to order additional testing "if the existing medical sources do not contain sufficient evidence to make a determination"). Here, while the records show that Plaintiff may have reported intermittent hand problems prior to September 1, 2014, nerve conduction testing showed only very mild to mild abnormalities as of September 16, 2014. Notably, Plaintiff did not provide an assessment documenting the degree of hand limitations prior to September 1, 2014. Because the existing evidence was sufficient to support the finding that the hand condition was not severe until September 1, 2014, the ALJ was not obliged to seek expert medical testimony.

### C. The Credibility Determination

Finally, Plaintiff contends that her "stellar work history" ought to have been acknowledged by the ALJ in making the credibility determination. *Plaintiff's Brief* at 14-18.

The credibility determination, currently guided by SSR 96-7p, directs that a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or

other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[7] 1996 WL 374186 at *2 (July 2, 1996). One of the factors to be considered is "[t]he consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work." SSR 96-7p at *6.

Plaintiff cites a long line of cases for the proposition that a claimant's good work history should be factored into the determination of whether she is credible. However, she is short on the particulars of why her work history was "stellar" other than to state that she reported work earnings for 117 out of 124 possible quarters since the age of 18. *Plaintiff's Brief* at 14-17. Moreover, the the ALJ acknowledged Plaintiff's work history. He noted that Plaintiff worked until 2010, but expressed the desire to leave work as early as 2008 (Tr. 23). He noted that while Plaintiff claimed that she was terminated in 2010 due to her inability to keep up with her work assignments, her testimony and reports to others suggested that she was laid off as part of a reduction in force (Tr. 23). The ALJ's summation of Plaintiff's work

---

[7]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below*. Nonetheless, SSR 96-7p applies to the present determination, decided on July 31, 2015. *See Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

history is consistent with my own review of the record.

More generally, the ALJ's determination that Plaintiff was capable of a range of exertionally light work until September 1, 2014 is well supported by the treating, consultative, and non-examining records. For example, treating records for the relevant period show a normal gait, full muscle strength, and normal muscle tone (Tr. 446). Plaintiff received exclusively conservative care for back pain (Tr. 377, 418, 607-609) and experienced good results from foot surgery (Tr. 454-455). Because the ALJ's credibility determination is well supported and adequately explained, a remand on this basis is not warranted. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination entitled to deference); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

I note in closing that my recommendation to uphold the finding that Plaintiff was not disabled before September 1, 2014 should not be interpreted to wholly discount her claims of some level of physical limitation before that date. However, because the ALJ's determination is supported by substantial evidence and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

# VI. CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 5, 2018        s/R. Steven Whalen
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on June 5, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on June 5, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen